

FILED
IN CLERK'S OFFICE
U.S. D~~~~~ ~~~RT E.D.N.Y.

★    JAN 1 1 2006    ★

P.M. ————
TIME A.M. ————

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PAUL PALMIERI,

                       Plaintiff,

        - against -

TOWN OF BABYLON, THE TOWN BOARD
OF BABYLON, RICHARD SCHAFFER,
FRANCINE BROWN, STEVE BELLONE,
ELLEN McVEETY, and WAYNE HORSLEY
individually and in the capacity of each as a
Member of the Town Board of Babylon, Town
of Babylon Inspector NORMA VARLEY
individually and in her capacity as Town
Inspector, Town of Babylon Employees,
DEBRAH HEINZ, MARYANN LEARY and
LYNN BIZARRO, individually and in the
capacity of each as Town Employee, PETER
CASSERLY, individually and in his capacity
as Commissioner of Planning and
Development, CAMILLE LUCARINI,
individually and in her capacity as Zoning
Inspector for the TOWN OF BABYLON,
LORI FORTE, individually and in her
capacity as Zoning Inspector for the
TOWN OF BABYLON, DOROTHY
NEWMAN, individually and in her capacity
as Zoning Inspector for the TOWN OF
BABYLON, FRANK J. ALBERTI, ESQ.,
individually and in his capacity as attorney
for the TOWN OF BABYLON, DENNIS H.
COHEN, ESQ., individually and in his
capacity as attorney for the TOWN OF
BABYLON, and any other unknown
agents, assigns and/or employees of the
TOWN OF BABYLON, individually
and in the capacity of each as Town
employee,

                    Defendants.

01 CV 1399 (SJ)
02 CV 6075 (SJ)

**MEMORANDUM
AND ORDER**

1

------------------------------------------------------------X

A P P E A R A N C E S:

LAW OFFICES OF
TIMOTHY M. McENANEY
28 East Main Street
Babylon, NY 11702
By:    Franklin Wilks, Esq.
Attorney for Plaintiff

FROOKS & FROOKS
3144 East Main Street
Mohegan Lake, NY 10547
By:    George Frooks, Esq.
Attorney for Plaintiff

YOUNG & YOUNG
863 Islip Avenue
Central Islip, NY 11722
By:    Richard W. Young , Esq.
Attorney for Plaintiff

R. BERTIL PETERSON, ESQ.
Staff Counsel
The Coalition of Landlords,
Homeowners & Merchants, Inc.
28 East Main Street
Babylon, NY 11702
Attorney for Plaintiff

KRAL, CLERKIN, REDMOND,
RYAN, PERRY & GIRVAN, LLP
69 E. Jericho Turnpike
Mineola, NY 11501
By:    Elbert Nasis, Esq.
        Thaddeus John Rozanski, Esq.
        Geoffrey H. Pforr, Esq.
Attorneys for Defendants

TOWN ATTORNEY'S OFFICE
Town of Babylon

2

200 East Sunrise Highway
Lindenhurst, NY 11757-2597
By:     Janice A. Stamm, Esq.
        Lynne A. Bizzarro, Esq.
Attorneys for Defendants

JOHNSON, Senior District Judge:

Presently before the Court is the Motion for Summary Judgment ("Motion") by defendants Town of Babylon ("the Town") and Richard Schaffer ("Schaffer"). For the reasons explained below, the Motion by the Town and Schaffer (collectively, "Defendants") is GRANTED, and Plaintiff's Complaint is DISMISSED in its entirety with respect to Defendants Schaffer and the Town. Moreover, as discussed below, Plaintiff's pending Motion for Default Judgment as to the other defendants is DENIED.

## BACKGROUND

The undisputed material facts in this case are as follows.[1] On or about June 6, 1978, the Town of Babylon adopted Local Law No. 3-1978 ("the Rental Permit Law" or

---

[2]Rule 56.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") requires, in any motion for summary judgment, that the moving party submit a statement of material facts that it contends are in dispute. The non-moving party then must, pursuant to Local Rule 56.1(b), set forth the material facts that it believes are in dispute. In the present case, each of the parties has submitted a statement of material facts. However, Plaintiff's Rule 56.1(b) statement does not controvert Defendants' Rule 56.1(a) statement in the manner prescribed by the rule. Specifically, Plaintiff has failed entirely to "*respond*[] to each numbered paragraph" in Defendants' statement. Local Rule 56.1(b) (emphasis added). Rather, Plaintiff's statement merely comports with that part of the rule requiring the non-movant to set forth "additional material facts as to which it is contended that there exists a genuine issue to be tried." Id. Nevertheless, although it is not required to do so, this Court will decipher Plaintiff's Rule 56.1(b) statement in an effort to do what Plaintiff should have done, namely, determine which facts set forth by Defendants in their Rule 56.1(a) statement are controverted by Plaintiff. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73-74 (2d Cir. 2001) (noting that "a district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules").

3

"RPL"), which requires property owners to obtain a rental permit for any non-owner occupied rental unit regardless of whether or not rent is paid. (RPL § 153-2; Defendants' Local Rule 56.1 Statement ("Defs.' Loc. R. 56.1 Stat.") ¶ 8.) On January 16, 1980, the Building Department of the Town issued a Certificate of Occupancy ("C/O") for real property located at 396/398 Vespucci Avenue in Copiage, New York ("the Property"), permitting it to be a two-family dwelling. (Plaintiff's Affidavit in Opposition to Defs.' Summary Judgment Motion ("Pl.'s Opp'n Aff."), Ex. B; Defs' Loc. R. 56.1 Stat.¶ 3; Plaintiff's Local Rule 56.1 Statement ("Pl.'s Loc. R. 56.1 Stat.") ¶¶ 2, 3.). In addition to specifying the Property's occupancy, the C/O certified that the Property "was at that time in compliance with the requirements of the Building Zone Ordinance and Building Code of the Town of Babylon." (Pl.'s Opp'n Aff., Ex. B.)

In the early 1980s, Plaintiff purchased the Property for somewhere between $80,000 and $95,000. (Palmieri Dep. 12:5-12:13, June 18, 2004.) He then sold it in 1999 for $175,000. (Plaintiff's Mem. of Law in Supp. of the Standing of a Landlord to Assert a Claim Under the Fair Housing Act, Attach. at 5.)

The Rental Permit Law requires that an owner seeking to obtain a rental permit apply in writing to the Town's Building Inspector and provide certification that the subject Property complies "with all the provisions of the Code of the Town of Babylon, the laws and sanitary and housing regulations of the County of Suffolk and the Laws of the State of New York." RPL §§ 153-3, 153-6. Although Plaintiff, during his ownership, had neither applied for nor obtained a rental permit for the Property, he rented it out to various tenants.

4

(Defs.' Loc. R. 56.1 Stat. ¶¶ 4-5, 9-10.) The Town commenced criminal proceedings[2] against Plaintiff in the Second District Court of Suffolk County; those proceedings were terminated in Plaintiff's favor.[3] (Pl.'s Loc. R. 56.1 Stat. ¶ 7.)

On December 11, 2002, Plaintiff filed an Amended Complaint ("the Complaint"), alleging the following causes of action: (1) the Rental Permit Law is an unconstitutional *ex post facto law* (Count I); (2) the Rental Permit Law , as enacted and as applied, violates the due process clause of the Fifth Amendment (Count II); (3) the Rental Permit Law, as enacted and as applied, violates the equal protection clause of the Fourteenth Amendment (Count III); (4) the Rental Permit Law, as enacted and as applied, is an unconstitutional taking under the Fifth Amendment (Count IV); (5) the Rental Permit Law, as enacted and as applied, violates the Fourth Amendment (Count V); (6) the Rental Permit Law, as enacted and as applied, violates the Fair Housing Act, 42 U.S.C. § 3604 (Count VI); (7) the Rental Permit Law violates the First Amendment right to freedom of association (Count VII); as well as state law claims of (8) malicious prosecution (Count VIII); (9) false

---

[2]Section 153-7 of the Rental Permit Law is titled "Penalties for Offenses" and provides as follows:

> A first violation of this article shall be punishable by a fine of not less than $250 and not more than $1,000 and/or imprisonment for a period not to exceed six months, or both. A second violation of this article within five years of a previous conviction of the offense shall be punishable as a misdemeanor and by a fine of not less than $1,000 and not more than $1,500 and/or imprisonment for a period not to exceed one year, or both. A third violation of this article within five years of the second conviction of the offense shall be punishable as a misdemeanor and by a fine of not less than $1,500 and not more than $2,500 and/or imprisonment for a period not to exceed one year, or both.

[3]According to Plaintiff, the criminal proceedings were commenced under Docket Nos. BATO 98-00814, BATO 98-01416, and BATO 98-0217.

P-049

arrest and imprisonment (Count IX); and (10) trespass (Count X).[4]

Defendants now move for summary judgment, requesting that this Court: (1) dismiss Counts I through VII and Count XI of Plaintiff's Amended Complaint; (2) grant a declaratory judgment that the Code of the Town of Babylon Chapter 153, et seq., is constitutional; and (3) dismiss Plaintiff's state claims for lack of pendent jurisdiction. (Defs.' Mem. of Law Supp. Summ. J. at 1.)

## JURISDICTION

The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

## PRELIMINARY MATTER: PLAINTIFF'S DEFAULT JUDGMENT MOTION

Before turning to the Motion for Summary Judgment, the Court notes that, in early 2004, Plaintiff moved for a default judgment ("Default Judgment Motion") against the following defendants: the Town Board of Babylon ("the Board"), Francine Brown ("Brown"), Steve Bellone ("Bellone"), Ellen McVeety ("McVeety"), Wayne Horsley ("Horsely"), Norma Varley ("Varley"), Debrah Heinz ("Heinz"), Maryann Leary ("Leary"), Lynn Bizzarro ("Bizzarro"), Peter Casserly ("Casserly"), Camille Lucarini

---

[4]Plaintiff's Complaint also alleges Count XI for attorneys' fees. However, this is not an appropriate, separate cause of action.

6

("Lucarini"), Lori Forte ("Forte"), Dorothy Newman ("Newman"), Frank J. Alberti, Esq. ("Alberti"), and Dennis Cohen, Esq. ("Cohen"), (collectively, "the Remaining Defendants").

In a February 24, 2004 letter ("Def. Counsel Letter") to Magistrate Judge Michael J. Orenstein, Defendants' counsel opposed the Default Judgment Motion, primarily on the grounds that service was apparently improper with regard to Bellone, McVeety, Horsely, Varley, Heinz, Leary, Bizzarro, Casserly, Newman, Alberti and Cohen, because service upon those individuals was attempted only via the delivery and mailing of copies of the Amended Summons and Complaint to the Town Clerk's office. (Def. Counsel Letter at 2.) According to Defendants' counsel, the Town Clerk's office does not have authority to accept service for the Town Attorneys or their office, and Plaintiff's failure to serve the Town Attorney's office renders service improper as to the relevant defendants. (Id.) Defendants' counsel also noted that service was not even attempted with regard to the Board, Brown, Lucarini and Forte. (Id. at 3.) Finally, Defendants' counsel referenced an affirmation from Alberti, a senior assistant town attorney for the Town Attorney's office, which states similar service-related defects. (Affirmation of Frank J. Alberti, Feb. 27, 2004, Docket Entry # 73.)

Plaintiff then resubmitted his Default Judgment Motion in a letter to this Court dated March 22, 2004 ("Pl. Mar. 22, 2004 Letter"). In that letter, Plaintiff does not dispute Defendants' counsel's assertions regarding the office and location to which the deliveries were made and the mailing were sent. In fact, Plaintiff confirms these statements in the

7

text of his letter and in the attached exhibits. (<u>Id.</u> at 1-2, Ex. A.) Moreover, nothing in or attached to Plaintiff's letter establishes that service was even attempted on the Board, Brown, Lucarini and Forte.

Thus, there is no dispute that service for certain defendants occurred only via delivery and mail at the Town Clerk's office, and that service for other defendants was not even attempted. There is also no dispute that none of the Remaining defendants has otherwise made any individual appearance in this case or has waived service in any manner.

Service of process in federal courts is governed by Rule 4 of the Federal Rules of Civil Procedure, which permit service upon an individual "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e). New York State's civil practice laws, in turn, basically permit service on an individual at his or her "actual place of business" as long as there is also a follow-up mailing to the same location. N.Y. C.P.L.R. § 308(2).

Generally, plaintiffs have "the burden of demonstrating that service was proper." <u>Howard Johnson Intern., Inc. v. Wang</u>, 7 F. Supp. 2d 336, 339 (S.D.N.Y 1998). Here, Plaintiff has failed to rebut the claims of improper service. Thus, he has not met his burden, and the Court must conclude that service on the Remaining Defendants was, in fact, improper, or in certain instances not attempted at all. In the absence of proper service, the Court cannot assert personal jurisdiction over the Remaining Defendants, meaning the Default Judgment Motion must be denied. See <u>United States v. Cally</u>, 197

8

F.R.D. 27, 28 (E.D.N.Y. 2000).

In addition, Rule (4)(m) provides that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." Fed. R. Civ. P. 4(m). The Complaint was filed on December 11, 2002, meaning well more than 120 days have passed without proper service on the Remaining Defendants. Plaintiff is now on notice that he has 60 days from the date this order is entered either (1) to serve properly the other Defendants or (2) to show good cause as to why such service would be impracticable within the allotted time frame. Failure to do one or the other shall result in this Court's dismissal of the Complaint, without prejudice, as to the Remaining Defendants.

According, Plaintiff's Default Judgment Motion is DENIED.

## STANDARD OF REVIEW

Turning to the Motion for Summary Judgment, a moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the movant to establish the absence of any genuine issue of material fact. Celotex Corp, 477 U.S. at 323; see also Goenaga v. March of Dimes Birth

9

Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). It is clear that "[i]n moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claims." Goenaga, 51 F.3d at 18; see also Celotex, 477 U.S. at 324.

The Court's responsibility in assessing the merits of a summary judgment motion is not to try the issues of fact, but rather to "'determine whether there *are* issues of fact to be tried.'" Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Sutera, 73 F.3d at 16.

If, however, the moving party meets its initial burden of demonstrating "proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). To satisfy this requirement, the nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or 'upon the mere allegations or denials of the [nonmoving] party's pleading.'" Id. at 532-33 (quoting Fed. R. Civ. P. 56(e)) (citations omitted). It is therefore the case that "[a]lthough all inferences must be drawn in favor of the nonmoving

10

party, mere speculation and conjecture is insufficient to preclude the granting of the motion." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citations omitted).

## DISCUSSION

### I. Plaintiff's *Ex Post Facto* Claim (Count I)

The United States Constitution, in Article I, Section 10, Clause 1, states that "[n]o State shall . . . pass any . . . ex post facto Law." To trigger this prohibition, "a law must be retrospective – that is, it must apply to events occurring before its enactment – and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (internal quotation marks and citations omitted). The justification for the *Ex Post Facto* Clause rests " upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused." Beazell v. Ohio, 269 U.S. 167, 170 (1925).

Plaintiff, who faced prosecution under the Rental Permit Law, does not, however, directly challenge that the criminal provisions of the Rental Permit Law violate the *Ex Post Facto* Clause. Rather, he bases his claim on his assertion that the rental permit, and

11

more so its application process, include building safety requirements that were not in effect when the Property's C/O was issued. (Compl. ¶ 83.)

Even if true, Plaintiff's objections to the Rental Permit Law and its application requirements do not even remotely raise legitimate *Ex Post Facto* Clause concerns. The law did not, upon its passage, suddenly subject landlords to criminal prosecution for innocent acts that had occurred prior to the law's enactment. Nor did it alter criminal penalties retroactively. To the extent Plaintiff is objecting to the fact that the Town's legislature chose to enact a code provision regulating rental properties, even for those properties that had been built prior to the enactment of the Rental Permit Law, such a law does not violate the *Ex Post Facto* Clause on that basis alone.

Moreover, as best as could be discerned from the record, any criminal proceedings against Plaintiff alleging violations of the Rental Permit Law were not based on any conduct that may have occurred prior to the law's enactment. In fact, Plaintiff did not even own the Property when the Rental Permit Law was passed. Thus, what apparently subjected Plaintiff to criminal prosecution under the Rental Permit Law was his admitted refusal to comply with the permit provisions – long after the passage of the law and after he purchased the Property and began renting it out. This sequencing of events does not implicate the *Ex Post Facto* Clause.

Thus, the *Ex Post Facto* Clause is inapplicable here, and Count One of Plaintiff's Amendment Complaint is dismissed with prejudice.

## II. Plaintiff's Due Process Claim (Count II)

Plaintiff asserts in Count II that the enactment and requirements of the Rental Permit Law, in effect, deprived him of his property rights without due process of law, in violation of the Fifth Amendment.[5]

As an initial matter, it is not even clear that Plaintiff has standing to bring this due process claim. The Court does not raise this threshold issue out of mere curiosity – standing is a basic requirement for bringing a claim in federal court. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). Thus, because standing raises a jurisdictional issue, the Court must first address *sua sponte* whether Plaintiff even has standing to raise the due process claim. See, e.g., Ocean View Capital, Inc. v. Sumitomo Corp. of Am., No. 98 Civ. 4067, 1999 WL 1201701, at *8 (S.D.N.Y. Dec. 15, 1999) (noting the same).

To establish standing under Article III of the United States Constitution, a plaintiff needs to "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." Newdow, 542 U.S. at 12 (citation omitted). In the context of a property-related due process claim, Plaintiff alleges he was injured both by the enactment of the Rental Permit Law as well as by its enforcement. The

---

[5] The Court notes that the Fifth Amendment to the United States Constitution protects individuals from actions by the federal government, not from actions by state or local governments. Plaintiff, instead, should have based his due process claim on the Fourteenth Amendment, as he later attempted to do in his opposition papers. His failure to do so in the Complaint, however, is immaterial, as the legal analysis is the same, and the Court shall proceed as if Plaintiff had, in fact, alleged in the Complaint a Fourteenth Amendment Due Process violation.

facts in the record, however, indicate he suffered no such due process-related injury. He did not purchase the Property until years after the Town enacted the Rental Permit Law, meaning he could not have suffered the alleged injury of being deprived due process whatsoever upon the statute's enactment. See, e.g., Brody v. Village of Port Chester, 261 F.3d 288, 290 (2d Cir. 2001) (noting that the plaintiff "having suffered no actual or threatened injury, lacks standing to bring these claims") (citation omitted).

Standing for the due process claim is also lacking with regard to enforcement of the Rental Permit Law. Plaintiff admittedly never applied for a rental permit, choosing rather to disregard the existence of law and to rent out his Property without the required permit. His failure to comply with the law by obtaining a permit undermines any claim he has that the Rental Permit Law as enforced violated due process with regard to his Property. See, e.g., Bonide Products, Inc. v. Cahill, 223 F.3d 141, 146 (2d Cir. 2000) (stating that plaintiff company that failed to comply with administrative summons "does not now have standing to argue that it was deprived of property based upon the [summon's] use in violation of the Fifth and Fourteenth Amendments"). Therefore, as an initial matter, the Court does not believe Plaintiff has standing to bring his due process claim. However, for completeness, the Court shall address the merits of the claim in the context of Defendants' motion for summary judgment.

It is clear in the Second Circuit that, for "a person to establish that the state has deprived him of property without due process, he must first identify a property right, second show that the state has deprived him of *that* right, and third show that the

14

deprivation was effected without due process." Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (citation omitted).[6]

In an attempt to identify such a property right, Plaintiff relies on the fact that in New York State, "nonconforming uses or structures, in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance." People v. Miller, 304 N.Y. 105, 107 (1952) (citations omitted). Thus, Plaintiff argues, because a C/O had been issued for the Property and he supposedly relied on the C/O when purchasing the Property, his "right" to have rented out the Property without complying with whatever safety improvements were required to obtain a permit was a "vested" property right under New York State law and was therefore entitled to due process. This argument is flawed on many levels, the first of which is that again – according to the record – the Rental Permit Law was enacted before the Town issued the C/O for the Property. This means that the Rental Permit Law upon enactment could not have required any changes to the use of the Property that would have already vested upon the issuance of the C/O.[7]

---

[6]As mentioned, Plaintiff did not even own the Property at the time the Rental Permit Law was passed. However, even if he had owned the Property at the time, the mere enactment of the Rental Permit Law would not have provided Plaintiff with a procedural due process claim, as "[t]he protection offered by the legislative process satisfies the requirements of procedural due process when the legislature enacts a law, or an agency promulgates a rule, affecting a general class." Kaufman v. City of New York, 717 F. Supp. 84, 92 (S.D.N.Y.1989).

[7]Even if the C/O had been issued before the Rental Permit Law was enacted, this would not exempt the Property from subsequent safety requirements. See, e.g., New York Coal. of Recycling Enters. v. City of New York, 158 Misc. 2d 1, 13 (N.Y. Sup. Ct. 1992) (stating, in case where businesses challenged local waste management laws, that "petitioners do not have immunity against the exercise of the police power because their businesses were originally established in full compliance

15

Further, to the extent Plaintiff is challenging not the enactment of the law itself but rather the requirements contained in the permit application, § 153-6 of the Rental Permit Law states that: "No permit or renewal thereof shall be issued under any application *unless the property shall be in compliance with all the provisions of the Code of the Town of Babylon, the laws and sanitary and housing regulations of the County of Suffolk and laws of the State of New York.*" (emphasis added). Thus, Plaintiff was on notice at the time he purchased the Property that the rental law itself required compliance with a much more comprehensive regulatory scheme. He has made, however, no showing that what the Town required as part of the application process was inconsistent with that larger (and legitimate) regulatory scheme, or that the inclusion of these additional requirements was even an unreasonable exercise of the Town's police power.

Moreover, even if the Court were inclined to agree with Plaintiff's theory regarding the C/O and vested rights – which the Court is not – Plaintiff's due process claim still fails because he cannot make the required additional showing that the Town deprived him of that property right. Continuous recital of the time line may be repetitious, but is it necessary. In 1978, the Town enacted the Rental Permit Law, which referenced the other health and safety laws in which an applicant must also be in compliance. The C/O for the Property was issued in 1980. The Plaintiff purchased the Property in the early 1980's. The

_____

with then existing laws") (citing Queenside Hills Realty Co. Inc., v. Saxl. 328 U.S. 80 (1946)). See also Kaufman, 717 F. Supp. at 89 ("It is clear . . . that an owner of a lawfully constructed building can be compelled in the name of public safety to make improvements to the property, even when those improvements require great expense." (citation omitted)).

facts undermine this claim.

Finally, to the extent Plaintiff alleges that the existence of the Rental Permit Law reduced the value of his Property, he has no recourse under the Due Process Clause of the Fourteenth Amendment because "the law clearly states that governmental action allegedly causing a decline in property values 'has never been held to deprive a person of property within the meaning of the Fourteenth Amendment.'" Scott v. Town of Monroe, 306 F. Supp. 2d 191, 196 (D. Conn. 2004) (quoting BAM Historic Dist. Ass'n v. Koch, 723 F.2d 233, 237 (2d Cir.1983)).

Therefore, Count II is dismissed with prejudice.

## III.    Plaintiff's Equal Protection Claim (Count III)

Plaintiff appears to allege that the Town's Rental Permit Law violates the Equal Protection Clause of the Fourteenth Amendment, both because it applies solely to non-owner occupied properties and also in the way it was enforced against him. (Compl. ¶¶ 108-116.)

It is well understood that the "Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citation omitted). This protection extends not only to member of a vulnerable class, but also to "individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Id. (citation omitted).

17

Regarding Plaintiff's facial challenge on equal protection grounds, it is important to note that "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. . . . [And, w]hen social or economic legislation is at issue, the Equal Protection Clause allows the [legislature] wide latitude." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985). Here, the Town's clear – and reasonable – interest is the safety of its residents who live in rental properties. The enactment of the Rental Permit Law is rationally related to its purpose of furthering safety. No further analysis of the law is necessary to dismiss Plaintiff's claim that the Rental Permit Law on its face violates the Equal Protection Clause.

With respect to his Fourteenth Amendment selective enforcement claim, to survive summary judgment, at a minimum Plaintiff must "show either that there was no rational basis for the unequal treatment received . . . or that the [Town's treatment of him] was motivated by animus." Id. at 500 (citation omitted). Plaintiff has done neither. The Town had every right to seek to enforce the Rental Permit Law against Plaintiff, who admitted he was never in compliance with it. Moreover, there is absolutely nothing substantive in the record that would give rise to a reasonable inference of animus toward Plaintiff from the Town, especially animus in the way the Town sought to enforce its laws.

Therefore, Count III of Plaintiff's Complaint is without merit and is dismissed with prejudice.

18

## IV. Plaintiff's Takings Claim (Count IV)

The Fifth Amendment guarantees that private property shall not "be taken for public use, without just compensation." U.S. Const. amend V. Importantly, "the fifth amendment is deemed to allow state and local governments broad power to regulate housing conditions without paying compensation for all resulting economic injuries." Sadowsky v. City of New York, 732 F.2d 312, 317 (2d Cir. 1984) (citation omitted). Plaintiff claims that the Town's rental permit requirement constituted a taking in that it effectively revoked the C/O that was issued before he assumed ownership of the Property. (Pl.'s Aff. in Opp'n at ¶ 16.) He thus challenges a law that, as mentioned, was enacted to improve the safety of rental units within the Town. This certainly qualifies as a common good.

As the Supreme Court clarified last year, "a plaintiff seeking to challenge a government regulation as an uncompensated taking of private property" must proceed under one of the four following theories: (1) that a "physical" taking resulted; (2) that there was a "total regulatory taking"; (3) that there was a taking, though one that did not rise to the level of a "physical" or "total regulatory taking," or (4) that there was an impermissible "land-use exaction." See Lingle v. Chevron U.S.A., Inc., 125 S. Ct. 2074, 2087 (2005). Plaintiff's taking claim is most appropriately read as the third type, one that falls short of a physical or total regulatory taking, and shall thus be analyzed as such.

Claims of this type are analyzed under the standards established in Penn Central

19

Transp. Co. v. New York City, 438 U.S. 104 (1978). See Lingle 125 S. Ct. at 2081. As the Supreme Court noted in Lingle, the Penn Central framework calls for courts to focus on a set of factors when discerning whether a taking has occurred. especially: (1) "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations," and (2) "the character of the governmental action – for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." Id. at 2081-82 (internal quotation marks omitted) (citing Penn Central, 438 U.S. at 124). Notably. "the Penn Central inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." Id. at 2082. Finally, "a taking is less likely to be found when the challenged interference with a property interest 'arises from some public program adjusting the benefits and burdens of economic life to promote the common good,' . . . than when the interference entails a physical invasion of the property by the government." Sadowsky, 732 F.2d at 317 (quoting Penn Central, 438 U.S. at 124).

Here. Plaintiff has made it clear his use of the Property was primarily to derive rental income. In fact, by all accounts he was successful in this endeavor, even despite the existence of the Rental Permit Law. And, as noted, he earned a substantial profit on the sale. Thus, it is not clear there was even any economic impact on him. However, even if he had been deprived of some economic return because of the Rental Permit Law, that

20

alone would not suffice to rise to the level of a taking without just compensation. <u>See</u> <u>Loretto v. Teleprompter Manhattan CATV Corp.</u>, 458 U.S. 419, 436 (1982) ("[D]eprivation of the right to use and obtain a profit from property is not, in every case, independently sufficient to establish a taking.") (internal citations omitted); <u>Pompa Const. Corp. v. City of Saratoga Springs</u>, 706 F.2d 418, 424 (2d Cir.1983) (determining that the "key question" was not whether the local zoning law allowed plaintiffs to use the property in a "profitable" manner, but whether plaintiffs could "sell the property to someone for that use"). In fact, even if the Court were willing to accept – which it is not – the theory that the Rental Permit Law abrogated the C/O, Plaintiff cannot escape the fact that "challenges have also been held to be without merit in a wide variety of situations when the challenged governmental actions prohibited a beneficial use to which individual parcels had previously been devoted and thus caused substantial individualized harm." <u>Penn Central</u>, 438 U.S. at 125 (citing <u>Miller v. Schoene</u>, 276 U.S. 272 (1928)).

Also, Plaintiff's claim that the Rental Permit Law interfered with his expectations of how he could utilize the Property based on the C/O alone is baseless. He purchased the Property years after the Rental Permit Law was enacted. Therefore, he had no basis for the expectations he may have had the time of purchase that the C/O alone controlled use of the Property. <u>See, e.g.</u>, <u>Sadowsky</u>, 732 F.2d at 318 (finding that plaintiffs who had purchased a Property after a law restricting its development had been enacted had "no basis at the time of closing for an expectation that there would be no obstacles to the development of their real estate"). Plaintiff's failure at the time of purchase to notice the law, or, upon doing so,

21

to investigate the conditions necessary to obtain a permit prior to renting the Property does not translate into a Fifth Amendment takings claim.

Finally, the value to the public good of ensuring rental properties meet certain minimum safety standards cannot seriously be in question, even if individual property owners are forced to bear the cost of making required improvements to their rental properties in return for a permit. The law is clear on this point – and not in a way that favors Plaintiff.

In sum, Plaintiff – who has suffered no cognizable harm with respect to the use of the Property while he owned it – has challenged a reasonable exercise of the Town's power to ensure the safety of certain residents who rent. This falls far short of a takings violation under the Fifth Amendment. Thus, Count IV is dismissed with prejudice.

## V.     Plaintiff's Fourth Amendment Claim (Count V)

On Fourth Amendment grounds, Plaintiff challenges the rental permit on its face as well as on its application. With respect to the facial challenge,[8] Plaintiff's basic argument

---

[8]Section 153-8 of the Rental Permit Law provides, in pertinent part, that:

> The Building Inspector of the Town of Babylon is authorized to make or cause to be made inspections to determine the condition of dwellings and to safeguard the health, safety, morals, and welfare of the public. The Building Inspector . . . is authorized to enter, upon the consent of the owner, any dwelling . . . at any reasonable time during daylight hours or . . . in an emergency, without the consent of the owner.

Section 153-9 states that:

> The Building Inspector of the Town of Babylon . . . is authorized to

P-049

is that the Rental Permit Law allows for searches based on warrants obtained on

"reasonable cause" rather than on "probable cause," thus violating the Fourth Amendment.

Perhaps unbeknownst to Plaintiff, though, is that "reasonable cause" under New York

State law is considered to be the equivalent of "probable cause" under the Fourth

Amendment. See Raysor v. Port Auth. of N.Y. & N.J., 768 F.2d 34, 39-40 (2d Cir. 1985)

(stating that New York law "reasonable cause" standard is equivalent to Fourth

Amendment's "probable cause" standard); Rowe v. City of Rochester, No. 00-CV-6333,

2002 WL 31974537, at *8 (W.D.N.Y. Dec. 23, 2002) (noting that "probable cause" is

known as "reasonable cause" under New York law). With this understanding, it is

difficult, to say the least, to see how the Rental Permit Law is unconstitutional on its face.

In fact, New York State's highest court, the Court of Appeals, has already rejected a

Fourth Amendment facial challenge to this exact statute. See Pashcow v. Town of

Babylon, 53 N.Y.2d 687, 688 (N.Y. 1981) ("[I]it cannot be said that the ordinance of the

---

> make application to the District Court for the issuance of a search
> warrant in order to conduct an inspection of any premises . . . where the
> owner refuses or fails to allow an inspection of its rental premises and
> where there is reasonable cause to believe that a violation of this article
> has occurred.

Section 153-10 states that:

> Nothing in this article, except for provisions concerning emergency inspections,
> shall be deemed to authorize the Building Inspector of the Town of Babylon or
> his authorized representative to conduct an inspection of any premises subject to
> this article without the consent of the owner of the premises and without a warrant
> duly authorized by an appropriate court.

Town of Babylon is unconstitutional on its face, for it does require consent or a warrant for an administrative search except in emergency situations."). This Court sees no reason why that assessment is not still entirely valid. Therefore, Plaintiff's Fourth Amendment facial challenge to the Rental Permit Law is dismissed.

Plaintiff also brings an "as applied" claim in accordance with 42 U.S.C. § 1983 ("§ 1983"),[9] asserting that the Town and its officials violated his Fourth Amendment rights when enforcing the Rental Permit Law.

### A. The Town

With respect to the Town, it is clear "that local governments [can] properly be sued as 'persons' within the meaning of [§ 1983]." Coon v. Town of Springfield, Vt., 404 F.3d 683, 686 (2d Cir. 2005) (citing Monell v. Dep't of Soc. Services, 436 U.S. 658, 690 (1978)). However, municipalities can only be held liable if "action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. This means that "a local government may not be sued under § 1983 for an injury inflicted

---

[9] 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

P-049

solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Town of Springfield, Vt., 404 F.3d at 686 (citing Monell, 436 U.S. at 694).

While Plaintiff bases his § 1983 claim on the enforcement of the Town's Rental Permit Law, he must do more to establish a claim that can withstand a summary judgment motion. Plaintiff must also show that, in an attempt to enforce the Rental Permit Law, a Town official acted under the color of state law and also "deprived [Plaintiff] of a right secured by the Constitution or laws of the United States." Palmieri v. Lynch, 392 F.3d 73, 78 (2d Cir. 2004) (citation omitted). Plaintiff makes no such showing. While he appears to allege that he was unconstitutionally seized as part of the Town's enforcement of its Rental Permit Law, his attempt to allege a Fourth Amendment violation in the Complaint amounts to nothing more than conclusory statements. He alleges no times, dates, places or persons related to such an allegedly unlawful seizure, other than to reference his arrest and imprisonment "on multiple occasions." (Compl. ¶ 77.)

There is nothing else in the record, though, to supplement Plaintiff's allegations. Instead, Plaintiff relies on the mere fact that he was apparently arrested and charged with violating the Rental Permit Law, and, for a reason not at all apparent from the record, the charges were later dismissed after Plaintiff contested them. Even if his claim that dismissal of these charges was on the merits, which the Court accepts as true for the

25

purposes of this motion, that alleged fact alone does not amount to a proper showing of a § 1983 claim. This is because a showing of favorable termination of the criminal charges against him does not relieve Plaintiff of his burden of showing how his Fourth Amendment rights were violated *at the time of his arrest and imprisonment*, regardless of what the result was of the proceedings. Cf. Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) ("[U]nder New York law, while the favorable termination of judicial proceedings is an element of a claim for malicious prosecution . . . it is not an element of a claim for false arrest.") (citation omitted); Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992) ("The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law.") (quotation marks and citation omitted). Plaintiff has not been able to meet this burden. Thus, Plaintiff's claim of a Fourth Amendment violation against the Town is dismissed with prejudice.

### B. Schaffer

The same shortcomings in Plaintiff's allegations against the Town also apply to his claim against Schaffer. As Defendants note, other than naming Schaffer in the Complaint (Compl. ¶ 13). Plaintiff fails to provide any allegations that Schaffer was involved in anyway in the alleged conduct. Even Plaintiff's opposition papers fail to specify how Schaffer himself had any supposed involvement. Thus, on that basis alone, Plaintiff has stated no cause of action against Schaffer.

However, even if Plaintiff has stated a cause of action again Schaffer, he would

still be entitled to qualified immunity, which is "a shield from *suit,* not simply liability." Holeman v. City of London, 425 F.3d 184, 189 (2d Cir. 2005) (citation omitted). It is well settled that "[q]ualified immunity shields [officials] acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Id. (internal quotation marks and citation omitted).

As the Second Circuit has stated, "the inquiry into whether a suit against [officials] should go forward is a two-step process: (1) the court must determine whether the facts, taken in the light most favorable to the party asserting an injury, show a violation of a constitutional right; and (2) the court must determine whether the constitutional right was 'clearly established' such that the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quotation marks and citations omitted).

Here, even viewing the facts in the light most favorable to Plaintiff, he has made no showing that Schaffer was involved in anyway with any alleged violation of Plaintiff's constitutional rights, Fourth Amendment or otherwise. Thus, there is no reason to even consider the second part of the analysis. Schaffer is entitled to qualified immunity and is therefore dismissed from this action.

Count V is therefore dismissed with prejudice.

## VI.    Plaintiff's Fair Housing Claim (Count VI)

Plaintiff alleges that the Rental Permit Law, in both its enactment and its enforcement, unlawfully discriminates based on race, in violation of the Fair Housing Act, 42 U.S.C. § 3604 ("FHA").[10]  (Compl. ¶¶ 142-158).

The Court first finds with respect to the Fair Housing Act claim that standing is a bar Plaintiff cannot surmount.  As noted earlier, to establish standing, a plaintiff needs to "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress."  Newdow, 542 U.S. at 12 (citation omitted).  Thus, Plaintiff "must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention."  Warth v. Seldin, 422 U.S. 490, 508 (1975); see also Fair Hous. in Huntington Comm., Inc. v. Town of Huntington, N.Y., 316 F.3d 357, 362 (2d Cir. 2003) ("Therefore, to bring suit, a plaintiff must meet only the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury.") (internal quotation marks and citations omitted); United States v. Cambio Exacto, S.A., 166 F.3d 522, 527 (2d Cir. 1999) ("[I]t is _injury_ that is at the heart of the standing question."); LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 424 (2d Cir.

---

[10] The FHA provides, in part, that "it shall be unlawful . . . [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin. . . . [and] [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604.

1995) (stating that private plaintiff attempting to bring an FHA claim must "allege distinct and palpable injuries that are fairly traceable to [defendants'] actions") (internal quotation marks and citation omitted).

Plaintiff has alleged two apparent injuries, namely, economic injuries to rental property owners (including himself[11]) in the Town as well as to racial minorities wishing to rent in the Town. (Compl. ¶¶ 150-151.) With regard to the former claim, Plaintiff asserts in general fashion that the Town's housing discrimination caused him and others to suffer economically. However, Plaintiff's Complaint and supporting documentation[12] fail

---

[11]According to the FHA, any "aggrieved person" has standing to challenge conduct prohibited under the statute. See 42 U.S.C. § 3613(a)(1)(A). The statute defines "aggrieved person" to include "any person who – (1) claims to have been injured by a discriminatory housing practice or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).

[12]Plaintiff had committed to providing Defendants with specific documentation outlining how he had been injured by the enactment and enforcement of the Rental Permit Law. See Plaintiff's Amended Response to Defendants' First Request for Production of Documents ("Pl's Am. Doc. Res.") Nos. 22-23. When he failed to do so, this Court directed him to provide any such documentation. See October 3, 2005 Order. As part of his submission in response to that Order, Plaintiff produced one document, titled Appraisal Investigations and Analysis: Rental Permit Act: Impact on Market Value ("the Appraisal"), by Howard F. Jackson, Jr., MAI, ASA, Chairman, Integrated Real Estate Services, Inc. While this document purports to demonstrate how the Rental Permit Law directly and negatively impacted Plaintiff's Property, the Court does not believe the Appraisal materially cures the factual defects here. Even if entirely true, which the Court is willing to accept solely for the purposes of this underlying motion for summary judgment, the Appraisal does not demonstrate that Plaintiff himself suffered any economic injury upon the sale of his Property – or, even if he had, that it was reasonably attributable to the existence of the Rental Permit Law. Speculation of the impact of the Rental Permit Law on affected homeowners in general aside, the record only shows Plaintiff making a profit on the sale of the Property. Plaintiff claims that the "level of diminished value for each of plaintiff's property parcel [sic] as alleged in paragraph '102' of the complaint was between $165,000 and $200,000." Plaintiff's Amended Response to Defendants' First Set of Interrogatories ("Pl.'s Am. Inter. Resp.") No. 17. However, he provided nothing else for the record to substantiate this claim. Any other suggestion of economic injury is just that – a suggestion, which is insufficient for standing purposes. This is not to say that the mere fact of a profit disqualifies one from establishing injury. Obviously, profit and injury are not mutually exclusive. However, there must be some demonstration as to how the particular profit actually reflects an injury. There is none here.

to specify how the Rental Permit Law specifically caused Plaintiff, who has already sold the Property – and apparently for a profit – any injury, economic or otherwise.

Plaintiff's latter claim, that minorities from the Town were injured, is also insufficient for standing purposes. First, the Complaint offers no specific or concrete facts on this point, relying rather on mere conclusory allegations. Such an approach is clearly insufficient to confer standing, as "a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." Baur v. Veneman, 352 F.3d 625, 637 (2d Cir. 2003) (citation omitted).

Moreover, even if Plaintiff could allege such facts with specificity, Plaintiff's reliance solely on the supposed discrimination against minorities in the Town is insufficient to confer standing. Plaintiff "must rely on his own injury and not that of his residents." Puglisi v. Underhill Park Taxpayer Ass'n, 947 F. Supp. 673, 694 (S.D.N.Y. 1996) (noting that FHA "cases 'do not recognize a right of housing providers . . . to advocate their residents' rights against discrimination'") (citing Hotel St. George Assocs. v. Morgenstern, 819 F. Supp. 310, 319 (S.D.N.Y. 1993)). See also Roth v. City of Syracuse, 96 F. Supp. 2d 171, 183 n.14 (N.D.N.Y. 2000) ("To the extent that plaintiffs rely on the legal rights of minority tenants who might have rented apartments from them had they known they had apartments available or had they not been suspended from the housing program, it is doubtful whether plaintiffs have standing under the Fair Housing Act to make this claim. A plaintiff may only assert the constitutional rights of others when a defendant's action adversely affects an existing relationship between plaintiff and the

30

third party.") (citing <u>Warth v. Seldin</u>, 422 U.S. 490 (1975)).

Even if Plaintiff had standing with regard to the FHA claim, it still would not survive on the merits. To survive a motion for summary judgment on this type of claim, a plaintiff may establish a claim on either "on a theory of disparate impact or one of disparate treatment." <u>LeBlanc-Sternberg</u>, 67 F.3d at 425 (citation omitted). Because it appears Plaintiff asserts both theories, the Court shall discuss each in turn.

### A. Disparate Impact

First, "[a] disparate impact analysis examines a facially-neutral policy or practice, such as a hiring test or zoning law, for its differential impact or effect on a particular group." <u>Huntington Branch, N.A.A.C.P. v. Town of Huntington</u>, 844 F.2d 926, 933 (2d Cir. 1988) (citation omitted). Moreover, "[t]o establish a prima facie case under this theory, the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." <u>Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 52-3 (2d Cir. 2002) (internal quotation marks and citations omitted).

Plaintiff's claim of disparate impact fails on the second requirement – the record is absent of any showing whatsoever that the Rental Permit Law impacts minorities in a significantly adverse or disproportionate manner. Plaintiff alleges discriminatory impact, then promises to produce evidence of such, <u>see</u> Pl.'s Am. Doc. Res. No. 21, but nothing of

31

the sort was ever submitted. Conclusory allegations alone do not suffice to establish a *prima facie* case. The record does not indicate in anyway – nor could one reasonable infer from it – that either the enactment or the enforcement of the Rental Permit Law has had a disparate impact on minorities seeking to rent in the Town. These are not insignificant points. See, e.g., Roth, 96 F. Supp. 2d at 183-84 (noting, in rejecting a claim of a violation under FHA, not only that "[p]laintiffs have produced no evidence of any racial animus by defendants toward any of plaintiffs' tenants, past, present or prospective," but also that "plaintiffs have failed to produce any evidence that the alleged discriminatory policies and procedures which defendants have imposed on them have had a disparate impact on their minority tenants' ability to obtain fair housing") (citation omitted).

### B. Disparate Treatment

With regard to disparate treatment, the Court must use the burden-shifting analytical framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze claims of intentional discrimination under the FHA. See City of Middleton, 294 F.3d at 48. Under this approach, Plaintiff "must first establish a prima facie case of discrimination." Id. at 49. To do so, he must offer evidence that "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." LeBlanc-Sternberg, 67 F.3d at 425 (internal quotation marks and citation omitted). Again, Plaintiff offers no such evidence. The record is devoid of any evidence that the Town had,

32

or has, any animus toward racial minorities, whether in the context of housing or in any other context.

Accordingly, Count VI, the allegation that Defendants violated the FHA, is dismissed with prejudice.

## VII.   Plaintiff's First Amendment Claim (Count VII)

Plaintiff claims that the Rental Permit Law violates his right to associate as guaranteed by the First Amendment. (Compl. ¶¶ 159-161.)  However, Plaintiff has not set forth any facts that could lead this Court to conclude that he rented the premises in order "to pursue goals independently protected by the First Amendment – such as political advocacy, litigation . . . or religious worship." <u>Brady v. Town of Colchester</u>, 863 F.2d 205, 217 (2d Cir. 1988) (internal quotation marks and citation omitted).  On the contrary, it is clear from the record as a whole that Plaintiff purchased and rented the premises for the sole purpose of generating income.  Therefore, Plaintiff's First Amendment claim must fail.  <u>See</u> <u>id.</u> (finding no cognizable First Amendment claim where plaintiffs "d[id] not allege in their complaint that they rented their property to pursue political or other goals independently protected by the first amendment" but rather they rented the property for "purely commercial reasons").  Accordingly, Count VII is dismissed with prejudice.

## VIII.   Remaining State Claims

Because Defendants are entitled to summary judgment on Plaintiff's federal

33

claims, the Court dismisses Plaintiff's state law claims.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.); Grondahl v. Merritt & Harris, Inc., 964 F.2d 1290, 1294 (2d Cir.1992) (same).

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED in its entirety, and Plaintiff's Complaint is dismissed with prejudice and in its entirety with respect to Defendants Schaffer and the Town.   Also, as stated above, Plaintiff's Default Judgment Motion is DENIED as to Defendants Brown. Bellone. McVeety, Horsely, Varley, Heinz, Leary, Bizzarro, Casserly, Lucarini, Forte, Newman, Alberti, Cohen, and the Board.  Plaintiff is now also on notice that he has 60 days from the date this order is entered to either (1) serve properly the other Defendants or (2) show good cause as to why such proper service is impracticable within the allotted time frame. Failure to do one or the other shall result in this Court dismissing the Complaint as to the other Defendants.

Furthermore, the conference currently set for February 3, 2006 is cancelled.


SO ORDERED.

Dated: January **6**, 2006
         Brooklyn, NY

s/SJ
_____
Senior U.S.D.J.

34